Roman Navarro ROSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–81–00299–CR.

Court of Appeals of Texas, Dallas.

Dec. 17, 1981.

John R. Leigh, Dallas, for appellant.

R. Kristin Weaver, Asst. Dist. Atty., Dallas, for appellee.

Before ROBERTSON, STEPHENS and VANCE, JJ.

STEPHENS, Justice.

Roman Navarro Ross was convicted by a jury of murder and sentenced to a term of 25 years in the Texas Department of Corrections. On appeal, he contends that the trial court committed reversible error on four occasions: by failing to include a charge on the law of self-defense; by admitting a photograph of a telephone book splattered with blood; by failing to declare a mistrial after the prosecution threatened the appellant on cross-examination with bringing his wife into court to testify against him; and by overruling the defense objection to the State's attacking appellant through his defense counsel. We sustain appellant's third ground of error and, accordingly, we reverse and remand.

In the early morning hours of December 29, 1979, appellant shot and wounded his estranged wife and shot and killed her male companion, Frank Williams, after discovering them together in his wife's apartment. Appellant contended that the offense committed was voluntary manslaughter rather than murder. He testified that his wife had encouraged him to believe a reconciliation was possible, that they had been seeing each other again, and that they had planned to meet on the evening of December 28. Twice that evening he visited her apartment and found that she was not at home. Returning after midnight, he entered the apartment through a window and discovered his wife in a bathrobe and the deceased clad only in a pair of pants. Appellant requested and received his wife's wedding ring and departed. A short time later, he returned to talk to his wife, but upon discovering that the deceased had not left, he lost control, broke through the apartment door, and shot the deceased and his wife.

The State argued that appellant knew he was not welcome at his wife's apartment and that the shooting was premeditated. Appellant's stepdaughter testified that she and her mother moved into their own apartment because they were afraid of appellant, and that appellant had previously threatened to kill them. The jury returned a verdict of guilty of the offense of murder.

In his third ground of error, appellant contends the trial court committed reversible error by failing to declare a mistrial after the following colloquy occurred during cross-examination of appellant:

Q. Now, isn't it a fact that your wife had made known to you on numerous occasions that there was [sic] any chance at all that there was going to be any reconciliation in your marriage and that she wanted you to just stay away from her?

A. No, she did not.

Q. That's not the truth?

A. No, it isn't.

Q. Do you care if I call her in and ask her that?

Appellant's objection was sustained and the jury was instructed to disregard the question. A mistrial was not requested. Appellant contends that the prosecutor's comment in effect made his wife an adverse witness by implying that her testimony would contradict his.

Under art. 38.11, Tex.Code Crim. Pro.Ann. (Vernon 1979), neither spouse may testify against the other in a criminal prosecution except in certain situations not present here. The State argues that appellant did not properly preserve error by failing to request a mistrial. We disagree. The disqualification of a spouse as an adverse witness cannot be waived by the accused. *Johnigan v. State*, 482 S.W.2d 209 (Tex.Cr.App.1972); *Woodall v. State*, 58 Tex.Crim. 513, 126 S.W. 591 (1910). Since an objection is not necessary to preserve error, appellant did not waive any error by failing to request a mistrial. *Cole v. State*, 92 Tex.Crim. 368, 243 S.W. 1100 (1922).

We next consider the State's contention that any error was cured by the instruction to disregard. In addition to the statement complained of in appellant's third ground of error, the record contains several other references by the prosecutor to the use of appellant's wife as a witness against him. The following occurred on cross-examination of appellant prior to the statement referenced above:

Q. Okay. So the first part of your statement you say that your wife, Willie Ann Ross, had spent the night with you the night before, is that correct?

A. That's true.

Q. All right. Now, you understand that the law precludes anybody from putting her on the stand to deny that, don't you?

MR. LAW: I'll object to that question. That's argumentative on the law and doesn't have any bearing here.

THE COURT: I'll overrule your objection as to argumentative.

Q. (By Mr. LeNoir) You understand that the law says that we can't call Willie Ann Ross in here and put her on the witness stand and deny all this, you understand that, don't you?

A. I do now.

Q. You do now?

A. Uh-huh.

Q. You never discussed that with your lawyer before, I don't guess?

A. Today.

Q. Today you did? So there's no way that we can put her on the stand and deny that, right?

MR. LAW: I think it's improper for him to argue the law here. It's cross-examination.

THE COURT: Overrule your objection.

Q. (By Mr. LeNoir) You understand that to be the law, though, don't you, Mr. Ross?

Finally, in closing argument, the prosecutor made the following statements to the jury:

First off, as you well know the law says that we cannot call the wife of the Defendant to testify against him. You knew that from the voir dire examination as Mr. Ortiz explained that to you, and you know that I brought it out on cross-examination that the Defendant here, Roman Ross, that he could have carte blanche, he could take the witness stand and say anything about his wife—

MR. LAW: Your Honor, I object to his arguing against the law, arguing that the—suggesting that the Defendant has the burden of proof in the case. I think that's improper.

THE COURT: All right. I'll overrule your objection.

MR. LAW: Judge, note our exception.

MR. LeNOIR: You may consider what I just said. This man right here when he takes the witness stand, he has carte blanche to say anything he wants about his wife knowing full well that we can never put her on the stand to rebut whatever he says.

In *Johnigan v. State, supra,* the Court of Criminal Appeals noted the rule that, "the State commits reversible error by calling the defendant's wife, thereby forcing him to object in the presence of the jury, when such action is done in such a manner as to

convey to the jury the impression that the wife, if allowed to testify, would rebut defensive testimony previously given in the case." *Johnigan, supra,* at 210. Although the State did not actually call appellant's wife to the stand in this case, we do not view this fact as dispositive. *See Sovey v. State,* 172 Tex.Crim. 638, 362 S.W.2d 121 (1962) (prosecution offered wife's statement into evidence); *Cole v. State,* 92 Tex.Crim. 368, 243 S.W. 1100 (1922) (prosecutor stated that wife testified against husband, the accused, at prior hearing). *See also Roach v. State,* 440 S.W.2d 72 (Tex.Cr.App.1968) (no error when State asked appellant to identify wife's handwriting since no suggestion wife's testimony would have been adverse to appellant).

 Initially, we note that it is not improper for the State to ask the accused whether he knows that he can call his wife as a witness if he desires, but that the State cannot. *Stallings v. State,* 476 S.W.2d 679 (Tex.Cr.App.1972). However, the State clearly exceeded the bounds of permissible argument in this case. In support of his defensive theory of voluntary manslaughter, appellant testified as to his wife's encouragement of his hope for reconciliation and of his anger and resentment when he found her with the deceased at her apartment. The prosecutor's questions and argument in reference to appellant's wife clearly suggested that she would have denied that she ever gave him any hope for a reconciliation. Thus, the State was permitted to do indirectly that which it could not do directly. *See Davis v. State,* 140 Tex. Crim. 597, 146 S.W.2d 994 (1940); *Lynn v. State,* 113 Tex.Crim. 637, 21 S.W.2d 1042 (1929). It seems fairly certain that the impression conveyed to the jury by this persistent line of questioning, reinforced in closing argument, was that the wife's testimony would have been adverse to appellant and favorable to the State. *Johnigan v. State, supra; Sovey v. State, supra; Davis v. State, supra.* Despite the fact that the trial court sustained appellant's objection to the State's question, "Do you care if I call her in and ask her that?", it is doubtful that the harmful insinuation of adverse testimony was remedied. *Cole v. State,* 92 Tex. Crim. 368, 243 S.W. 1100 (1922).

Based upon the above authorities, we conclude that the State committed reversible error by indirectly making appellant's wife a witness against him in violation of art. 38.11, Tex.Code Crim.Pro.Ann. (Vernon 1979).

We have examined appellant's remaining three grounds of error and find them to be without merit.

Reversed and remanded.