David Wayne WILLIAMS, Appellant,

v.

The STATE of Texas, State.

No. 2–82–132–CR.

Court of Appeals of Texas, Fort Worth.

May 4, 1983.

Lewis Dickson, Houston, for appellant.

Jerry Cobb, Dist. Atty. by Lee Gabriel, Asst. Dist. Atty., Denton, for the State.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

## OPINION

FENDER, Chief Justice.

The appellant, David Wayne Williams, was convicted by a jury of aggravated rape and was sentenced to thirty years in the Texas Department of Corrections and a one thousand dollar ($1,000.00) fine.

We reverse and remand.

The prosecutrix in this case is an eleven year old mentally retarded female who is the sister of Williams' wife and was living with the Williams when the incident occurred. After a conversation with her teacher and her teacher's aide at school later that morning, the child welfare office was contacted. After school, the child was taken to a hospital where a rape examination was performed. The examination revealed the presence of motile and non-motile sperm in the child's vagina and that her hymen was no longer intact. Both Williams and the prosecutrix testified that Mrs. Williams was home on the morning of the rape.

Grounds of error one, three and five are all based on the following jury argument by the prosecutor, Mr. Marsh:

Now, the Defendant testified that on that night that he was in that house, and so was his wife. State of Texas can not subpoena a wife in any criminal case—

MR. JACKSON: Now, Judge, that's improper argument.

MR. MARSH: —to testify against her husband.

MR. JACKSON: Now, Judge, that's not true, it's not the law, we object to it and ask you to instruct the jury not to consider it. And we further move for a mistrial.

MR. MARSH: Your Honor, based on the cases the State presented to the Court and prior to voir dire examination, we ask that the objection be overruled.

THE COURT: I'm going to overrule the objection.

MR. MARSH: Thank you, Your Honor. She testified that she was there—

MR. JACKSON: Judge, may I have a running objection to this argument so I don't have to get up every time and make an objection every time he mentions this subject?

THE COURT: Yes, you may have a running objection based on your—the way you made your objection.

MR. JACKSON: And I further object that there's no evidence to that that he's talking about, speculation, there's no evi-

dence and we object to that also, Your Honor.

THE COURT: Overruled.

MR. MARSH: So, she's a witness unavailable to the State, because that's the law in the State.

Now, ladies and gentlemen of the jury, I'm going to tell you what, you had a chance to look at S———— B————, you had a chance to observe S———— B————, there was no—not one person of all of the people that she talked to, there was not one person who was cross examined as to what she may or may not have said. There was never, ever any indication to the contrary.

Now, he makes something of a fact that she talked to me for approximately forty-five minutes in my office. But the indictment was returned in March and she's the only witness that makes the accusation that can be called by the State. And we didn't—

MR. JACKSON: Judge, we object to that, there's no evidence of that whatsoever, and we ask you to instruct the jury not to consider it and further move for a mistrial.

THE COURT: Overruled.

Williams argues that this argument injected new, harmful, and unsworn testimony by the prosecutor to the effect that Williams' wife believed him to be guilty but could not be called by the State, that it made Mrs. Williams a witness against him in violation of the spousal privilege, and that it violated his right to due process of law.

■ Under V.A.C.C.P. art. 38.11, neither spouse may testify against the other in a criminal prosecution except in certain situations not present here. This is a right of the accused which cannot be waived. *Johnigan v. State,* 482 S.W.2d 209 (Tex.Cr.App. 1972). It is well recognized, however, that the State may comment in argument on the failure of the accused to produce his wife as a witness when she could have testified about matters properly admissible in evidence. *King v. State,* 614 S.W.2d 165 (Tex. Cr.App.1981); *Boles v. State,* 598 S.W.2d

274 (Tex.Cr.App.1980). The reason for this rule is to allow the State to explain to the jury why the defendant's wife was not produced and that the State is not in any way responsible for her absence when it is evident that she might possibly be a competent and material witness.

■ The State's argument in this case goes beyond mere comment. The argument that the prosecutrix was the "only witness that makes the accusation that can be called by the State" combined with the argument that Williams' wife was at home during the incident clearly suggests that, if only the law had not sealed her lips, Mrs. Williams' testimony would have rendered Mr. Williams' guilt a foregone conclusion.

In *Johnigan v. State, supra,* the Court of Criminal Appeals noted that "the State commits reversible error by calling the defendant's wife, thereby forcing him to object in the presence of the jury, when such action is done in such a manner as to convey to the jury the impression that the wife, if allowed to testify, would rebut defensive testimony previously given in the case." *Johnigan, supra,* at 210–211. This is exactly the impression conveyed by this argument. The difference in the means by which that impression was conveyed is not dispositive. *Ross v. State,* 629 S.W.2d 106 (Tex.App.—Dallas 1981).

■ Based on the above authorities, we hold that the argument constituted reversible error as unsworn testimony by the prosecutor and by indirectly making Williams' wife a witness against him in violation of art. 38.11. We need not reach Williams' due process claim. Accordingly, we sustain grounds of error one and three.

■ We find it necessary to consider only one of Williams' six remaining grounds of error. Ground of error nine asserts that the evidence is insufficient because the State failed to prove that Williams had sexual intercourse with the prosecutrix on a date anterior to the presentment of the indictment. Under the "Burks-Greene" rule, if the defendant has once been placed

in jeopardy and the evidence is found insufficient, no further prosecution may be had. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). Therefore, in order to remand, we must determine that the evidence is sufficient.

The instant indictment was presented and filed on March 11, 1982. The record reflects the following testimony during the direct examination of the prosecutrix:

Q All right. And let me ask you this: S_____ do you recall the 4th day of March, 1982?

A (Witness nods head affirmatively.)

Q And would you tell the jury and the Court what happened to you in the early morning hours of that day back there? Will you tell them what happened in your bedroom at your home that—during the nighttime on the day before you went to school and talked to your teachers about it; will you tell the jury?

A (Witness nods head affirmatively.)

Q Okay. Go ahead and tell them what happened.

A Well, last night when me and Kay and them were—when me and Kay and Tenisha went to bed last night, Wayne—Wayne came into my room. And when he was—when he came in there he told me to hush and everything. And—when I was trying—when I was—when I was getting up, and he told me to hush. And when he did, I was scared.

Q You were what? You were what? I'm sorry, I didn't hear you. You were scared?

A (Witness nods head affirmatively.)

Q Okay. And then what happened? Tell the jury. Now, you know, we talked about it yesterday, and you're going to have to tell these people here about it. All right?

Okay. Tell them—tell them what happened, can you do that? Look at them and tell them what happened that night.

MR. JACKSON: Judge, we object to the District Attorney approaching the witness without the Court's permission and telling her what to do. I mean, I don't object to what she says, but not forcing her to say anything.

THE COURT: I will overrule the objection.

MR. MARSH: Thank you, Your Honor.

Q (By Mr. Marsh) S_____, will you tell the members of the jury that night? Okay? Go ahead and tell them.

A Well, last night when me and Kay and Tenisha was going to bed, Wayne had came into my room and he opened the door and as soon as I heard the door I turned.

The prosecutrix then described the rape.

Williams contends that there is no evidence that he had sexual intercourse with the prosecutrix at any time other than "last night"—a date obviously after the presentment of the indictment.

■ We do not agree. The prosecutrix in this case is an eleven year old retarded child. The prosecutor began this line of questioning by asking her if she remembered the day of the offense and asked her to tell the jury what happened to her on that day. She nodded affirmatively to each of these questions. She then proceeded to tell the prosecutor and the jury what happened to her on that day. It is obvious that she began this recitation with "last night" because she was repeating her earlier reports. There is nothing in this record to suggest that there was another rape on the night before her testimony.

We find the evidence sufficient to prove intercourse on a date prior to the indictment and remand the case for a new trial under that indictment.